Case 4:19-cv-00023-MFU-JCH  Document 22  Filed 03/04/21  Page 1 of 11
Pageid#: 712

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 04 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| Kimberly W.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 4:19-cv-00023 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| COMMISSIONER | ) | By:   Joel C. Hoppe |
| OF SOCIAL SECURITY, | ) |         United States Magistrate Judge |
|     Defendant. | ) | |

Plaintiff Kimberly W. asks this Court to review the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 11. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I cannot find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I respectfully recommend that the presiding District Judge reverse the decision and remand the case under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

[its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe

impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

On February 8, 2016, Kimberly filed for DIB and SSI alleging that she had been unable to work since June 27, 2014, because of arthritis, fibromyalgia, degenerative disc disease, depression, obesity, and high blood pressure. *See* Administrative Record ("R.") 187–88, 189–94, 209, ECF No. 9-1. Kimberly was forty-two years old, or a "younger person" under the regulations, on her alleged disability onset date. R. 187; 20 C.F.R. §§ 404.1563(c), 416.963(c). Disability Determination Services ("DDS"), the state agency, denied her claims initially in April 2016, R. 63–74, 75–84, and upon reconsideration in July 2016, R. 85–95, 96–104. On January 12, 2018, Kimberly appeared with counsel and testified at an administrative hearing before ALJ Theodore W. Annos. *See* R. 28–51. A vocational expert ("VE") also testified at this hearing. R. 52–56.

ALJ Annos issued an unfavorable decision on June 13, 2018. R. 12–21. He found that Kimberly had not worked since June 27, 2014, and that she met the Act's insured-status

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

requirement through December 31, 2019.[3] R. 14. At step two, the ALJ found that Kimberly had severe impairments of fibromyalgia, lumbar spine disorder, bilateral hip disorder, left knee disorder, polyarthralgia, and obesity. *Id.* Kimberly's other medical conditions did not have more than a minimal effect on her functional abilities during the relevant period, and, thus, were not severe impairments. R. 15–16. Her severe impairments did not meet or medically equal the relevant Listings for major disfunction of a joint, disorders of the spine, obesity, or fibromyalgia. *See* R. 16 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02, 1.04 and SSR 02-01 and 12-2p).

The ALJ then evaluated Kimberly's residual functional capacity ("RFC") and found that she could perform "light work"[4] except that she could never crawl or climb ladders, ropes, or scaffolds, and she could occasionally push and pull with her upper and lower extremities and occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. R. 16. She could tolerate occasional exposure to workplace hazards. *Id.* Based on this RFC and the VE's testimony, the ALJ determined that Kimberly could return to her past relevant work as a recreation aide, social services aide, sales clerk, manager, and management trainee. R. 19–20; *see* R. 52–53. The ALJ also determined that Kimberly could perform other light work that offered a significant number of jobs in the national economy. R. 20–21; *see* R. 53–54. Accordingly, the ALJ found that

---

[3] The latter date is called the date last insured, or "DLI." *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012). "To qualify for DIB, [Kimberly] must prove that she became disabled prior to the expiration of her insured status." *Johnson*, 434 F.3d at 655–56. The ALJ was required to consider Kimberly's "complete medical history," 20 C.F.R. § 404.1512(d)(2), including any relevant evidence created after her DLI that suggested some link between her "post-DLI state of health and her pre-DLI condition," *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see* R. 16. A person who can meet these relatively modest strength requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

4

Kimberly was not disabled during the relevant period. R. 21. The Appeals Council denied Kimberly's request to review the ALJ's decision, R. 1–5, and this appeal followed.

### III. Discussion

Kimberly challenges the ALJ's assessment of functional limitations attributable to her physical impairments. *See* Pl.'s Br. 14–28, ECF No. 15. She asserts that the ALJ improperly weighed the opinion of Brittany Dillon, FNP; failed to account for Kimberly's obesity; failed to perform a function-by-function analysis of her remaining ability to perform work-related functions; and improperly assessed her complaints of pain. I find that the ALJ made a clear error in failing to address Kimberly's "severe" obesity and the effect it may have had on her functioning. Accordingly, I find that the case must be remanded on that ground.

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and symptoms.[5] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016). The ALJ has broad (but not unbounded) discretion to decide whether an alleged limitation is supported by or consistent with

---

[5] "Symptoms" are the claimant's own description of her medical impairment. 20 C.F.R. §§ 404.928(a), 416.902(n).

other relevant evidence, including objective evidence of the underlying medical impairment, in the claimant's record. *See Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). Generally, a reviewing court will affirm the ALJ's RFC findings when it is clear that he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and he built an "accurate and logical bridge from that evidence to his conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quotation marks and brackets omitted). *See Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019); *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 662 (4th Cir. 2017).

In making an RFC determination, an ALJ should consider the combined effect of all the claimant's medical impairments. 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e). The regulations acknowledge that obesity may compound the effects of other impairments:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(Q); *see also* SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002).

 A. *Medical Evidence and Opinions*

In November 2012, X-rays showed moderate to severe degenerative disc disease with osteoarthritis at L3-4 and L4-5. R. 318. In April 2013, an MRI showed multilevel spondylosis and facet arthropathy most prominent at L4-5 and L5-S1. R. 319.

6

Kimberly treated with Nicholas Kipreos, M.D., in March, September, and December 2015. At the appointments, Kimberly complained of back and fibromyalgia pain. Dr. Kipreos noted that Kimberly was 5'9" and her weight fluctuated between 300 and 313 pounds. He diagnosed lumbago, fibromyalgia, and obesity, and he prescribed pain medications, administered steroid injections, and encouraged weight loss and exercise. R. 273–74, 275–77, 278–80.

During an appointment on March 2, 2016, Kimberly told Dr. Kipreos that she had been exercising faithfully, walking one mile on a treadmill and riding a stationary bicycle for 20 minutes. R. 338–40. She weighed 298 pounds. R. 340. Kimberly reported that her low back pain was improving with exercise, although she still had significant sacroiliac discomfort. R. 338, 340. On May 31, Kimberly said she had been exercising at the gym two or three times a week and had lost 16 pounds in three months. R. 360. Her muscle pain had improved with exercise, but her back pain persisted. *Id.*

On May 14, 2015, William Humphries, M.D., conducted a consultative examination. R. 555–58. He also ordered MRIs of Kimberly's back and hips. Those MRIs showed multilevel degenerative changes of the hips, pubic symphysis, and lumbar spine, most significantly at L3-4. R. 560–62. On examination, Dr. Humphries noted some lumbar tenderness, mildly antalgic gait, negative straight leg raise test that produced thigh discomfort, and some range of motion limitation in her neck, back, shoulder, hips, and knees. R. 556–57, 565. Kimberly was 5'10" tall and weighed 303 pounds. R. 556. Other findings were normal. Dr. Humphries limited Kimberly to light work with occasional climbing, kneeling, or crawling. R. 558.

In April and July 2016, Richard Surrusco, M.D., and Robert McGuffin, M.D., reviewed Kimberly's medical records on behalf of the state agency. R. 65–74, 75–84, 87–95, 96–104. They determined that Kimberly could perform light work with limitations to occasional postural

maneuvers. R. 70–71, 80–81, 92–93, 101–02. They attributed these limitations to her degenerative joint disease, spinal disorder, fibromyalgia, and obesity. R. 71, 81, 93, 102.

B. Kimberly's Statements

During the administrative hearing, Kimberly testified that she was 6'2" tall and weighed 299 pounds. R. 35. She drove to stores four or five times a week, R. 35–36, and she visited with an elderly woman twice a week, R. 37–38. She could make simple meals, but she did not cook. R. 36. Kimberly took care of several pets, did her laundry every two weeks, and cleaned the house once a week, but she needed to take breaks because of her back pain. R. 36–38. Kimberly had pain in her back, hips, left knee, and foot all the time, she had to change positions every two minutes, and she had to lie down for an hour a day. R. 43–45, 47. Activity or even standing made her pain worse. R. 43, 48.

C. Analysis

The ALJ found that Kimberly's fibromyalgia; spine, bilateral hip, and left knee disorders; polyarthralgia; and obesity were severe impairments. R. 15. At step three, the ALJ determined:

> The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment. . . . In reaching this conclusion, I considered . . . Social Security Rulings 02-01 (Obesity). . . . However, the diagnostic tests, physical exams, and the claimant's reported activities and abilities do not indicate that the claimant's impairments meet or equal . . . any [] listing.

R. 16 (record citations omitted). In reviewing the medical evidence, the ALJ noted that in September 2015 Kimberly had a Body Mass Index ("BMI") of 43.04,[6] over the following year

---

[6] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. For adults, both men and women, Clinical Guidelines describe a BMI of 25 to 29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.' The clinical guidelines recognize three levels of obesity. Level I includes BMIs of 30.0–34.9. Level II includes BMIs of 35.0–39.9. Level III, terms 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." SSR 02-1p, 2002 WL 34686281, at *2.

she lost a total of 19 pounds, and in January 2018 her BMI was 38.5. R. 17–18. In his analysis of the evidence of record, the ALJ discussed Kimberly's efforts to exercise and her activities of daily living. R. 18. He did not mention her obesity or the standard under which he was required to evaluate it. *See id*.

The ALJ's conclusion that obesity is a severe impairment does not by itself necessitate additional limitations. *See* SSR 02-1p, 2002 WL 34686281, at *6 ("Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."). An ALJ is also not required to include a detailed analysis regarding a claimant's obesity. *See Richards v. Astrue*, No. 6:11cv17, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) ("[T]here is no language in SSR 02-1p that directs the ALJ to include a lengthy analysis, or indeed, any precise analysis regarding obesity when issuing an opinion. It only mandates that the ALJ consider the effect of obesity during steps two through five of the five-step inquiry."). But the ALJ must consider a claimant's obesity in steps two through five of the five step inquiry. *Id.* at *8. "[A] total failure to examine obesity in a disability hearing constitutes reversible error." *Id.* Here, the ALJ noted the medical evidence of Kimberly's obesity, found obesity to be a severe impairment, and cited, without elaboration, the SSR for obesity in his step three analysis. He did not otherwise discuss the standard for ALJ's to evaluate the effects of a claimant's obesity on her functional abilities at any of the other steps of his analysis. The ALJ's utter lack of analysis or explanation constitutes a near total failure to examine the effects of Kimberly's obesity.

Kimberly's BMIs typically placed her in the "extreme" range of obesity. She asserts that her obesity exacerbated the limitations caused by each of her other severe impairments. Nevertheless, the ALJ did not meaningfully discuss the relationship between Kimberly's

"extreme" obesity and her back, hips, and knee impairments and their effect on her functional abilities. Accordingly, reversal is required.

I take no position on whether Kimberly is entitled to disability benefits for the relevant period. On remand, the Commissioner must consider and apply the applicable legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Kimberly cannot prove she was disabled based on the medical evidence alone, provide a logical link between the evidence the Commissioner found credible and the RFC determination.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** Kimberly's Motion for Summary Judgment, ECF No. 14, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 16, **REVERSE** the Commissioner's final decision, **REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: March 3, 2021

*Joel C. Hoppe*
Joel C. Hoppe
United States Magistrate Judge